**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

J.D.D., INC., and
JAMES GLADSTONE,

      Plaintiffs,

                                              Case No. 12-10396

v.                                          Hon. Lawrence P. Zatkoff

CLINTON TOWNSHIP,

      Defendant.

_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on December 10, 2013

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

This matter is before the Court on Defendant Clinton Township's Motion for Summary

Judgment [dkt 17].  The motion has been fully briefed.  The Court finds that the facts and legal

arguments are adequately presented in the parties' papers such that the decision process would

not be significantly aided by oral argument.  Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it

is hereby ORDERED that the motion be resolved on the briefs submitted, without oral argument.

For the following reasons, Defendant's motion is GRANTED.

## II. BACKGROUND

This case revolves around the alleged improper actions taken by the Clinton Township

Police Department (the "CTPD") against J.D.D., Inc. and James Gladstone ("Plaintiffs").

Plaintiff J.D.D., Inc. does business as Cracker Jack's Bar ("Cracker Jacks") in Clinton Township, Michigan. Cracker Jacks is a Class C licensed establishment. Plaintiff James Gladstone is the owner/operator of Cracker Jacks.

The rest of the factual background in this case appears to be in dispute. From what the Court can discern, the instant action hinges on two critical occurrences:

(1) alleged general acts of harassment perpetrated by the CTPD against Plaintiffs from 1999 to 2009;[1] and

(2) one particular investigation conducted by the CTPD in January of 2009 involving Plaintiffs.

## A. ALLEGED GENERAL ACTS OF HARASSMENT

From 1999 through early 2009, Plaintiffs assert the CTPD targeted "[P]laintiffs . . . and their patrons for inspections; unwarranted questioning, stopping and detaining of patrons; selective ticketing of patrons; and other such actions." Plaintiffs claim this harassment started due to Plaintiff Gladstone unknowingly dating the same woman as a captain of the CTPD. Plaintiffs advance that the CTPD parked marked patrol cars in Plaintiffs' parking lot, approximately ten times a day, to "thwart Plaintiffs' customers from patronizing Cracker Jacks."

Plaintiffs also assert that this general harassment included the CTPD reporting Plaintiffs to the Michigan Liquor Control Commission ("MLCC") more often than other liquor establishments in Clinton Township. Plaintiffs claim these reports were the result of improper ticketing and were thus completely without merit. These citations provide further evidence, Plaintiffs assert, of the CTPD's intentional policy to wrongfully harass Plaintiffs. Plaintiffs

---

[1] Plaintiffs' various filings are inconsistent as to when the alleged harassment at the hands of the CTPD started. In their complaint Plaintiffs' allege the CTPD targeting began in 2001, while in their response brief they assert the harassment started in 1999. Defendant's filings all contain 2001 as the first year the alleged harassment occurred.

allege these continued acts of harassment have diminished their business to the point that they are "barely able to keep the business open."

In rebuttal, Defendant alleges that, from 2001 to 2011, the CTPD did nothing more than respond to routine police runs at Cracker Jacks relating to fights, assaults, domestic violence, disorderly persons, drugs on the premises, suspicious persons, theft and other incidents. Defendant claims that the CTPD's response to calls for assistance by Plaintiffs or their patrons during this ten year period—more than 100 times—were justified and indicate Plaintiffs were not targeted more often than any other similar establishment in Clinton Township. Additionally, Defendants assert that the CTPD only reported Plaintiffs to the MLCC nine times, and that each incident involved either a patron fight or a complaint of violations. Defendant argues that, as the CTPD is legally obligated to report such serious incidents at liquor establishments to the MLCC, these reports do not provide any evidence of the sort of harassment Plaintiffs allege.

## B. JANUARY 2009 INCIDENT

Both parties agree that, in or about January 2009, the CTPD conducted an undercover investigation concerning the sale of crack cocaine at Cracker Jacks. Defendant asserts the CTPD received information from a confidential informant that she could purchase crack cocaine from Plaintiff Gladstone at Cracker Jacks. Over the course of January and February 2009, an undercover agent with the CTPD purchased crack cocaine four times on three separate occasions from a bartender at Cracker Jacks. On February 26, 2009, the bartender was arrested and the CTPD closed the investigation.

Plaintiffs assert that the CTPD's January 15, 2009, report concerning this investigation contains materially false statements. Specifically, Plaintiff Gladstone contends he was falsely identified by the CTPD as a target or suspect in their investigation. Plaintiff Gladstone asserts

3

that, as he has never used any illegal drugs, these allegations and his inclusion as a criminal suspect in the CTPD's investigation were completely baseless.  As such, Plaintiff Gladstone concludes that this is further evidence of the illegal harassment perpetrated by Defendant through the CTPD.

Defendant argues that, although Plaintiff Gladstone was originally the target of the CTPD's investigation, the CTPD's focus later changed as the investigation progressed. Defendant admits that it eventually became clear that Plaintiff Gladstone was not linked to the sales of crack cocaine occurring at Cracker Jacks.  Defendant asserts, however, that the CTPD was justified in investigating Plaintiff Gladstone, as it did initially have information from a confidential informant that Plaintiff Gladstone was involved in the sales of crack cocaine occurring at Cracker Jacks.  Defendant further contends that the mere inclusion of Plaintiff Gladstone's name as a target of an investigation into the sale of crack cocaine does not give rise to any cause of action.

## C. PROCEDURAL HISTORY

On January 30, 2012, Plaintiffs filed their complaint in this Court, alleging deprivation of their due process rights (Count I); deprivation of their rights to equal protection of the law (Count II); business libel and slander (Count III); and libel and slander of Plaintiff James Gladstone (Count IV).  On February 15, 2012, this Court entered an Order dismissing without prejudice Counts III and IV.

## III. LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(c); *Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001). The moving

party bears the initial burden of demonstrating the absence of any genuine issue of material fact,

and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986). The moving party discharges its burden by "'showing'—that is,

pointing out to the district court—that there is an absence of evidence to support the nonmoving

party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at

325).

Once the moving party has met its burden of production, the burden then shifts to the

nonmoving party, who "must do more than simply show that there is some metaphysical doubt as

to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

(1986). The nonmoving party must "go beyond the pleadings and by . . . affidavits, or by the

'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts

showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citing Fed. R. Civ. P.

56(e)). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's]

position will be insufficient [to defeat a motion for summary judgment]; there must be evidence

on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby,

Inc.*, 477 U.S. 242, 252 (1986).

## IV. ANALYSIS

### A. CONTINUING VIOLATIONS DOCTRINE

As a preliminary matter, Defendant asks that the Court dismiss Plaintiffs' complaint as

untimely. Specifically, Defendant argues that all of the alleged harassment perpetrated by the

CTPD took place outside of the three-year statute of limitations period for claims arising in

Michigan under 42 U.S.C. § 1983 ("§ 1983"). While Plaintiffs do not dispute that the statute of

5

limitations would normally bar their claims, they assert that the continuing violations doctrine entitles Plaintiffs to have the Court consider their causes of action. The Court finds Defendant's argument persuasive, and thus finds that Plaintiffs' suit is time barred and must be dismissed.

The Sixth Circuit has articulated that the continuing violations doctrine may be used by plaintiffs to pursue potentially actionable incidents that occur outside the statute of limitations period. *See Burzynski v. Cohen*, 264 F.3d 611, 617–18 (6th Cir. 2001). "Although state law provides the statute of limitations to be applied in a § 1983 damages action, federal law governs the question of when that limitations period begins to run." *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003). Michigan law provides for a three-year statute of limitations for § 1983 claims. *See Carroll v. Wilkerson*, 782 F.2d 44, 45 (6th Cir. 1986) (citing Mich. Comp. Laws §600.5805(8)). The statute of limitations begins to run when the plaintiff knows or has reason to know of the injury creating the cause of action. *See Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 856 (6th Cir. 2003).

The Sixth Circuit has established two distinct categories contained in the continuing violations doctrine: "namely, those alleging serial violations and those identified with a longstanding and demonstrable policy of discrimination." *Sharpe*, 319 F.3d at 266. The first category arises where evidence is provided of some ongoing present discriminatory activity, while the second category requires a showing by a preponderance of the evidence that an institution's operating procedure included purposeful discrimination against the class plaintiff purports to be a member of. *Id.* (citations omitted).

The Sixth Circuit "rarely extends" the continuing violations doctrine to § 1983 claims, instead traditionally reserving its use for Title VII cases. *Id.* at 267. Furthermore, the continuing violations doctrine may not be applied in § 1983 claims where the plaintiff seeks redress for

6

discrete acts of discrimination that occurred outside the limitations period.  *Id.* at 268 (citing *Nat'l R.R. Passenger Corp v. Morgan*, 536 U.S. 101, 113 (2002) ("discrete discriminatory acts are not actionable if time barred . . . [e]ach discrete discriminatory act starts a new clock for filing charges alleging that act.")).  Finally, "the limitations periods begin to run in response to discriminatory acts themselves, not in response to the continuing effects of past discriminatory acts."  *Trzebuckowski*, 319 F.3d at 858 (citations omitted).

Although Plaintiffs assert their case raises the sort of serial violations and longstanding policy of discrimination necessary for the continuing violations doctrine to apply, the Court is not convinced.  As to the first category, the Court finds that Plaintiffs have failed to provide any evidence of present discriminatory action.  Indeed, in his deposition Plaintiff Gladstone explicitly indicated Plaintiffs' suit was based on the CTPD's January 2009 undercover investigation into the sale of crack cocaine along with other actions taken by the CTPD prior to 2009.  It thus appears clear to the Court that Plaintiffs' suit rests either on actions that occurred outside the limitations period or upon any continuing effects of those alleged discriminatory acts.  As a continuing violations argument cannot stand on either, the Court finds that Plaintiffs' claims do not trigger the first category of the continuing violations doctrine.

Additionally, the Court finds that Plaintiffs' suit does not fall into the second category of the continuing violations doctrine, as they have failed to show by a preponderance of the evidence that the CTPD purposefully discriminated against the class of which Plaintiffs are members.  The Court finds that Plaintiffs' allegation that the CTPD treated them differently than the rest of the class of which they are members—"other residents"—lacks any basis in fact.  Plaintiffs provide no clarity as to the vast confines of their "other residents" class distinction, and the Court refuses to speculate as to its meaning.  The breadth of such a demarcation, however,

warrants evidence of at least some other similarly situated institution being treated differently. Plaintiffs have provided no such evidence, instead placing the onus of such production on Defendant.  As Plaintiffs bear the burden of proving a genuine issue of material fact exists once Defendant has met its production burden, the Court does not find Plaintiffs arguments alleging Defendant failed to produce evidence of similar treatment convincing.

Finally, the Court finds that Plaintiffs have impermissibly based their continuing violations argument on discrete incidents of discrimination that occurred outside of the limitations period.  Plaintiffs provide a detailed list of the 182 times that the CTPD filed police reports over the alleged period of harassment, along with the nine times Plaintiffs allege the CTPD impermissibly reported Plaintiffs to the MLCC.  Plaintiffs also focus extensively upon the January 2009 CTPD police report in which Plaintiff Gladstone is named as a suspect in an undercover sale of crack cocaine investigation.  All of these incidents appear to the Court as discrete occurrences clearly identifiable by Plaintiffs.  The "filing clock" for the statute of limitations thus necessarily began when each incident occurred.[2]  As the three-year statute of limitations clearly expired as to each discrete incident of alleged discrimination, Plaintiffs' claims are time barred.

For the reasons discussed above, the Court finds that Plaintiffs' claims do not trigger the continuing violations doctrine.  As such, they are time barred by the statute of limitations for § 1983 claims arising in Michigan and the Court must dismiss Plaintiffs' complaint.

## B. Section 1983 Claims for Alleged Violations of Plaintiffs' Equal Protection and Due Process Rights

As established, the instant action is time barred by the applicable Michigan statute of limitations and thus the Court must dismiss Plaintiffs' complaint.  Even if the instant action was

---

[2] The Court must note that it is at a complete loss as to why, if the alleged harassment by the CTPD was as "devastating" as indicated, Plaintiffs waited over a decade to file suit.

not time barred, however, the Court finds that Plaintiffs' due process and equal protection claims fail to raise a genuine issue of material fact. Each will be discussed briefly.

I. <u>Legal Standard</u>

Section 1983 is not itself a source of substantive rights, but rather provides a right of action for the vindication of independent constitutional guarantees. *See Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990). In order to prevail on a civil rights claim under § 1983, Plaintiffs must establish: (1) a person acting under color of state law, (2) deprived Plaintiffs of a right secured by the U.S. Constitution or laws of the United States. *See, e.g.*, *Smoak v. Hall*, 460 F.3d 768, 777 (6th Cir. 2006). With respect to the second factor—whether Defendant deprived Plaintiffs of a constitutional right—the Court must analyze Plaintiffs' equal protection and due process claims.

Plaintiffs advance both a general violation of their equal protection rights and a specific violation through the CTPD's alleged selective enforcement of the law. A successful equal-protection claim requires Plaintiffs to prove that "the government treated [Plaintiffs] disparately as compared to similarly situated persons." *Ctr. For Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011). Additionally, there are three different types of selective enforcement claims that Plaintiffs may try to assert: 1) those alleging arbitrary government discrimination perpetrated against a member of a protected class based on class membership; 2) those brought by individuals asserting they were punished for exercising constitutionally protected rights; and 3) those brought by individuals claiming to be a "class of one" alleging the government—with no rational basis—intentionally treated them differently from others similarly situated. *Hillside Prods., Inc. v. Duchane*, 249 F.Supp.2d 880, 888 (E.D. Mich. 2003).

9

Plaintiffs also assert Defendant violated their procedural and substantive due process rights.  "A § 1983 plaintiff may prevail on a procedural due process claim by either (1) demonstrating that he is deprived of property as a result of established state procedure that itself violates due process rights; or (2) by proving that the defendants deprived him of property pursuant to a 'random and unauthorized act' *and* that available state remedies would not adequately compensate for the loss."  *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991). Substantive due process is defined generally as "[t]he doctrine that governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed[.]"  *Pearson*, 961 F.2d at 1216.  When government action is challenged on substantive due process grounds, a court must first determine whether a fundamental right is implicated.  If the right is not fundamental the court must apply a "rational basis" review.  *See, e.g.*, *Seal v. Morgan*, 229 F.3d 567, 575 (6th Cir. 2000) ("Government actions that do not affect fundamental rights or liberty interests . . . will be upheld if it they are rationally related to a legitimate state interest.").

II. Analysis

The issue before the Court in addressing all of Plaintiffs' equal protection and due process claims is essentially the same: whether the actions of the CTPD violated any of the Plaintiffs' constitutional rights.  The Court finds that they did not.

With regards to Plaintiffs' equal protection and selective enforcement claims, the analysis for each is virtually identical.  As Plaintiffs assert they are a "class of one"—thus alleging their case falls into the third category of selective enforcement claims—the Court must determine for each equal protection count whether any of the actions taken by the CTPD rise to such a level of disparate treatment without any rational basis that Plaintiffs' rights were violated.  The Court

10

finds that the record is completely void of any factual evidence to support such an assertion. The anecdotal evidence upon which Plaintiffs' argument rests is directly contradicted by reports issued by the MLCC and the CTPD. These reports indicate that the police runs and MLCC violation reports were simply the result of the CTPD doing what they are entrusted by the public to do: uphold the law.[3] The MLCC violation reports indicate the CTPD routinely issued MLCC citations to other bars in Clinton Township. Further, even if the Plaintiffs had been able to show that Cracker Jacks was "treated differently" than other establishments in the area, the history of drug and violent offenses that have occurred at or around Cracker Jacks clearly present to the Court a rational basis for the actions taken by the CTPD.[4] As such, the Court finds that Plaintiffs' equal protection and selective enforcement claims fail to raise a genuine issue of material fact.

Plaintiffs' due process claims likewise fail to raise a genuine issue of material fact. In these claims, Plaintiffs assert the CTPD's labeling of Plaintiff Gladstone as a "criminal suspect"—without providing Plaintiff Gladstone with a hearing to address these "wrongful and unwarranted charges"—deprived Plaintiffs of a liberty and property interest in their business. Initially, Plaintiffs' contention overstates the CTPD's actions: it is undisputed that Plaintiff Gladstone was never charged with any crime. Furthermore, the Plaintiffs provide no legal authority upon which the Court could rely in finding that merely being named as a criminal suspect in a police investigation creates any deprivation of the constitutional rights protected by

---

[3] Although Plaintiffs assert employees of Cracker Jacks only called the CTPD, at most, "twice a year for assistance," Plaintiffs provide no evidence as to how often *patrons* called the CTPD for assistance. Defendant has provided evidence that most of the 182 police reports created by the CTPD involving Cracker Jacks were not initiated by the CTPD. If Plaintiffs are asserting that various citizens in the community are conspiring with the CTPD to perpetuate this alleged harassment, Plaintiffs have provided no evidence to support such a stance.
[4] Undisputed evidence submitted by the Plaintiffs [dkt. # 19, Ex. 11, p. 2-3] indicates that from June of 2001 through December of 2002 there were a dozen reports of criminal activity involving violence occurring at Cracker Jacks. The Court finds this is more than enough evidence to establish a rational basis for the CTPD patrolling Plaintiffs' establishment.

the 14th Amendment.  Although Plaintiffs assert that the CTPD's actions have significantly diminished Plaintiffs' business "to the point of being taken away by the Township's actions," the Court finds that Plaintiffs have failed to provide any factual support for such a contention.  As such, Plaintiffs' due process claims fail to raise a genuine issue of material fact.

In a § 1983 suit, "there is a strong presumption that the state actors have properly discharged their official duties, and to overcome that presumption the plaintiff must present clear evidence to the contrary; the standard is a demanding one." *Gardenhire v. Schubert*, 205 F.3d 303, 319 (6th Cir. 2000) (internal citations omitted).  The Court finds that Plaintiffs have failed to present the sort of clear evidence required to overcome this strong presumption.  As such, the Court finds that Plaintiffs' equal protection and due process claims fail to raise genuine issues of material fact.

### V. CONCLUSION

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED that Defendant's motion for summary judgment [dkt 17] is GRANTED.

IT IS SO ORDERED.

s/Lawrence P. Zatkoff
HON. LAWRENCE P. ZATKOFF
U.S. DISTRICT COURT

Dated:  December 10, 2013

12